Madam Clerk, please call the first case. 116-1436. Mayors vs. City of Chicago. Counsel, you may proceed. Thank you. Good morning. May it please the Court. Counsel, Dan Wellner for the City of Chicago. This case is about the Commission's finding on causation of a right shoulder injury and whether that finding was against the manifest weight of the evidence standard. The standard, as you well know, is established by the courts. And what it says is basically the court is not to remove weight of the evidence looked at by the Commission. They are not to reject reasonable inferences because other inferences could be drawn. Counsel, we know the standards. Why don't you get to the issue? Sure. In this case, the Commission's decision was that there was no causation because there was no evidence of an injury to the right shoulder until at least six months after the beginning of the treatment and after the injury itself. And there was no confirmation of a rotator cuff tear until over a year after the injury. Wasn't there some explanation by the claimant's doctor? Didn't he say that because of the other ostensible injuries, it might have got obfuscated and lost among the treatment of the other injuries? Didn't they try and address that? The treating doctor did address that, and that was the doctor's opinion. That was one of the many inferences that the Commission could have had in deciding whether there was causal connection. And what the Commission found in particular is they based their decision upon the whole record of the medical treatment and then also Dr. Wolin's expert opinion. And Dr. Wolin's opinion is, if I may just briefly sum up, is he said there's no evidence of a causal connection between the condition of the right shoulder and the episode of April 4, 2012. Well, he stated specifically there's no contemporaneous record of either an injury or symptom reliable or referable to the right shoulder. And the Commission ostensibly believed him over Chudnik, right? They believed him, and as I will go on, I believe that was a reasonable inference to make based upon the whole record of the medical treatment. Okay, so you've got the better of the experts. Is there anything else that you can point out that weighs in favor of the respondent's case? There is. It all starts on the date of injury itself. Mr. Torres fills out an occupational report of injury. He does not mention an injury to the shoulder. He goes to Mercy Works the day after. There's no history of a right shoulder injury. There's histories to the ankle. There's histories to other body parts. He hasn't mentioned that for, what, about six months? The first time I see it mentioned in the record is about six months. He sees Dr. Lorenz in October 2012. He had already seen Dr. Lorenz on a couple of occasions. Dr. Lorenz examined him. He even filled out a pain drawing a few months before that, and he did not point to the right shoulder as being an issue. So he, after the date of injury itself, he does not mention the right shoulder. There is, as we go through four days later, after the injury, no mention of the right shoulder. After that, throughout April, throughout May, no mention of the right shoulder. The left shoulder, actually, there are some complaints about the left shoulder, but that's not an issue here. As I said, he starts going to his own orthopedic doctor, Dr. Lorenz, in June of 2012. He completes his pain drawing. He points to the left upper back and the neck. And, again, it's the left upper back. There's no right shoulder complaints. There's no treatment. And I think this is important because he's seeing both at Mercy Works and with Dr. He's both seeing Mercy Works doctors, and he even sees a pain management doctor in between there, Dr. Jane, a couple months later, a pain physician. He reported petitioner himself reports low back and neck pain. Dr. Jane treats the cervical spine. Dr. Lorenz also treats the cervical spine. After he sees Dr. Lorenz in June, he returns to him in August of 2012. There's no right shoulder complaints or treatment. The city of Chicago sent him to Dr. Ahn, an orthopedic doctor, on September 14, 2012. Mr. Torres gives a history of injuring his neck and has complaints of neck and low back pain. The right shoulder isn't mentioned. And throughout all of these medical treatments, I see physical examinations being performed, x-rays are being performed, but x-rays not on the right shoulder. There is no sign of a right shoulder injury. Didn't the claimant testify that he experienced shoulder symptoms immediately after the accident? He told his treaters in Mercy Works and Lorenz about the symptoms. He told him. He tested that as his testimony, but as the records point out, there is no complaint of right shoulder pain. So you're saying there's conflict between his testimony at the hearing and any documentary evidence? I am. You know, you've alluded to this fall at home. What do you make of this alleged fall at home in May or October 2012 or May of 2012 that bears on this at all? How does that bear on this? Right. He goes to Mercy Works on May 21st, and the report is he's got pains in both of his shoulders. Not necessarily after the accident itself, but after working all day, he has pains in both bilateral shoulders. There's a note put in that record by the Mercy Works doctor indicating that he had a fall at home. That in itself should not lead to a total conclusion that there was some kind of injury to the right shoulder a month and a half earlier. That's an isolated event. That's the only one mention of bilateral shoulder pain in the record until about October of 2012. So then if you go look at the physical therapy and Mercy Works records immediately after that May 21st appointment, there are complaints, but those complaints are on May 25th, for instance, neck pain and left shoulder pain. Left shoulder pain was reported again a couple weeks later on June 12th. All right. So you acknowledge there's some conflicting evidence here. Chudnik, Alpine, there was a causal or one doctor, Alpine, no causal. One doctor said there was a causal connection. Lack of support in the medical records means it's not against the manifest way of the evidence. Is that your argument in essence? That is my argument in essence. Okay. What about your physician? Was he accurate in terms of his record review stating that there was never a mention of right shoulder? So, yeah, there's one sentence in Dr. Wolin's report where he says, in fact, the first mention of a shoulder injury is by Dr. Chudnik greater than a year later. In isolation, this sentence did cause confusion. But I think if you look at the sentences before that work, he says there's no contemporaneous record of either an injury or symptom for frugal right shoulder. And I think what he is referring to is that it's not until greater than a year later that Dr. Chudnik says, okay, now we have a rotator cuff tear. I've looked at the MRI. I've examined this patient, and now we have a surgical rotator cuff tear. So I believe that while the language of Dr. Wolin may be somewhat vague, it's not enough to say that this decision is in error somehow and that there's no evidence or not sufficient evidence to support the commission's decision. And going into Dr. Chudnik's opinion itself, we see a change in Mr. Torres' history. When he suddenly mentions that he has a right shoulder or that the right shoulder always hurt him in October 2012, a new history of injury pops up. He says suddenly that he was hanging from his right arm when he fell. This wasn't previously mentioned. The histories during his testimony and in the earlier medical records are that he lost his footing and fell. And Plains himself, when he sees Dr. Chudnik in June of 2013, develops this even further by saying that he was, again, hanging from that tree, he had to climb down the tree, and he had a history of always feeling pain. This testimony itself was in conflict with earlier testimony. This history itself was in conflict with the earlier testimony and with the medical records that occurred right after the injury occurred. That being said, it was then reasonable for the commission to find that petitioners' histories of injury were not very credible at the time he told Dr. Lorenz and Chudnik,  Again, what I think the circuit court did was insert their own interpretation of the medical and find that that was what should have happened instead of realizing that there was a reasonable inference made by the commission that we have this whole history of no treatment to the shoulder, of no complaints of the right shoulder for almost six months. And for those reasons, the commission decision should be confirmed. Thank you. Thank you, counsel. Thank you. We have time and reply. Counsel, you may respond. Good morning, Justices. Counsel, may it please the Court, Mark Conley on behalf of Mr. Torres. We believe the commission's decision is against the manifest way of the evidence, and the circuit court's decision versing the commission should be affirmed. The commission indicated that not one of the records contains findings consistent with the right shoulder pathology he had after 10-17-12. The record makes clear the plaintiff did have right shoulder complaints immediately following the April 4, 2012 accident. The day after the accident, April 5th, he had complaints of slight tenderness in the right paracerbical area and right trapezius. Dr. Chudnik indicated there was no examination done that day that would have indicated either a slap or rotator cuff tear. There are similar mentions of extreme tenderness around the medial border of the scapula into the rhomboids and elevated scapula muscular on April 12th, April 24th, May 15th, June 25th. May 21st, 2012, the plaintiff says he couldn't move his shoulders. As Justice Hudson said, he was actively treating for his neck, and Dr. Chudnik did give the opinion that it's plausible that he didn't realize that pain was emanating from his shoulder during the course of the neck treatment. He stated in his report there was no delayed presentation, but rather delayed diagnosis because of distracting injuries, most specifically the cervical injuries. Eventually, Dr. Lorenz did recommend the MRI arthrogram on November 7th, 2012, which did show the slap tears, rotator cuff tears. The records are filled with mentions of the right shoulder, the fact that the pathology was not identified until November 7th, 2012, should not bar compensability. Any decision concerning that would be against the manifest way of the evidence. So you're taking issue with closing counsel that there was a delay in this reporting? Yes, Your Honor. Both that there were mentions of the right shoulder, but I think there was a delay in the actual diagnosis of it being a right shoulder issue because he was constantly complaining of the neck going into the right arm to the point where Dr. Lorenz eventually, he doesn't know where this pain is coming from. That's why he recommends the MRI arthrogram, which does show the tears. Now, again, Dr. Nolan states that there's no mention until over a year after the accident. We know that's not correct. There was, again, we would say it certainly is the day after the accident, but the fact that the medically diagnosed pathology was not established until over a year later doesn't mean that that condition wasn't already there. The fact that Dr. Chudik didn't say, okay, this is a rotator cuff over a year. He obviously had these complaints. He added to the point where Dr. Lorenz recommended the MRI arthrogram. And as Dr. Chudik stated in his report, it's entirely reasonable that these symptoms could be masked from that. So you're saying that it was the delay in diagnosis, not any delay in the injury, per se? Correct. Correct. And I think the records bear that up. I think if it was a situation where the right shoulder was specific. Then why is it against the manifest way of the evidence of the commission's decision? Because the commission stated that not one of the records contains findings consistent with the right shoulder pathology. There were mentions of it. There's mentions of it the day after the accident where he's talking about tenderness. There's consistently mentioned in April, three different times in April, May, June. So I think it's consistently mentioned throughout there that there are findings consistent with that. I think Judge White specifically stated, any thorough reading of the record leads to the obvious conclusion that the petitioner's right shoulder injury was caused by the accident. And any finding contrary would be in accordance with the manifest way of the evidence. I would agree with his opinion. But what do you do with Warren's opinion that clearly established ostensibly there was no causal connection? I think his opinion's flawed. He never examined it. He never examined the plaintiff. In his opinion, he's saying there's no mention of it until over a year later. We know that's not true. We know that Dr. Lorenz is ordering them, or Arthur Graham, six months after it. He made a complaint to him. He doesn't see Dr. Chudik where there's a definitive diagnosis until over a year later. So I think that it's why you mentioned expert versus expert. I think that Dr. Chudik is much more persuasive in his. But more importantly, the commission's decision is talking about how there's no mention whatsoever of the right shoulder. And I think that there clearly is. So I think that's the greater issue, that there's mentions of it. It's a delayed diagnosis. Furthermore ---- Let's try and pin that down. We say there's mention or no mention in the records of a problem with the right shoulder. I mean, that's a little bit vague. What the arbitrator found specifically adopted by the commission was this. The claimant did not make a specific complaint. A specific complaint of right shoulder pain until more than six months after the accident. What did the record say? Was he complaining specifically about right shoulder pain immediately? I think if it said ---- Or was there some discomfort? What's the state of the record? There's discomfort. I think if he said, I injured my right shoulder. I have severe pain. I probably wouldn't be here today. The day after the accident is when like a slight tenderness in the right paracervical area and right trapezius. Shortly thereafter, he's treating actively for the neck. And he has the radicular pain in the arm. And again, Dr. Chuttick says this is no delayed presentation. Rather, delayed diagnosis. So I think it's an issue where Lorenz isn't able to figure out what's the issue here with Mr. Torres. That's why he eventually recommends the MRI arthrogram. And it's not a situation where they're recommending maybe a diagnostic arthroscopy. There were significant tears and pathology in that MRI arthrogram to lead them to treat more actively. What's this lurking reference to a fall later on? There's a fall at home, Justice? Yeah. No doctor referenced that as the cause of the injury. No commission decision or arbitrator decision stated that that was the causal connection. There's no opinion. I think it could go towards his credibility. But that's something that the arbitrator and commission didn't weigh as. Well, it did show up in a report. I mean, you say nobody based opinion. It didn't come out of thin air. Didn't Dr. Duddeck, did he reference it somewhere? It's in an addendum at Mercy Works. I believe at that trial, Mr. Torres said that it wasn't because of a fall at home. There were the mentions prior to that of the. Well, what was it that was in Duddeck's records about this harmful? It was in Mercy Works records that he fell at home. And I believe that was May 21, 2012. There was an addendum. And that he was told that it was not work related. And so that he would have to. That's your opinion, obviously. You're saying that's a red herring as far as you're concerned. Correct. There's never been. Neither of the lower courts have ever said that that was the cause of the right shoulder injury that broke causation, that it was a situation that completely ruined his credibility. Neither did Dr. Mullen. And obviously Dr. Chodak did not make that opinion. In conclusion, we would ask that the circuit court be affirmed. Thank you. Thank you, counsel. Counsel, you may reply. Thank you, counsel. Just a couple of points. The circuit court chose to infer that some complaints to various muscles in the upper back and perhaps even on the right side meant that he had a shoulder condition. The commission chose not to make those inferences. Counsel's experts said that was important. Our expert looked at all the records and did not find any importance to that. And again, the circuit court inserted its own interpretation of the evidence when there was probably reasonable evidence that there were no direct complaints to the right shoulder, there was no diagnosis. The record does show there were physical examinations performed by orthopedic surgeons and that no right shoulder complaints were found. For those reasons, we again request that the decision of the circuit court be reversed and that the commission be affirmed. Thank you. Thank you, counsel. This matter will be taken under advisement and a written disposition shall issue.